IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 7, 2014

**ALVIN MALONE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 06-00684    Paula Skahan, Judge**

**No. W2013-01682-CCA-R3-PC  - Filed January 8, 2015**

Petitioner, Alvin Malone, was convicted by a Shelby County jury of two counts of first degree felony murder, one count of first degree premeditated murder, and two counts of especially aggravated kidnapping. The first degree murder conviction merged with one of the felony murder convictions, and Petitioner was sentenced to two life sentences and two twenty-year sentences, all running consecutively. This Court affirmed Petitioner's convictions and sentences on direct appeal. *State v. Alvin Malone*, No. W2007-01119-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 813, at *73-74 (Oct. 2, 2008), *perm. app. denied* (Tenn. Mar. 23, 2009). Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel both at trial and on direct appeal. After several evidentiary hearings over an extended period of time, the post-conviction court granted relief in part and denied it in part. As it relates to this appeal, the post-conviction court found that Petitioner had not established deficient performance as to trial counsel's failure to call two proposed alibi witnesses. The post-conviction court held that Petitioner was not entitled to relief from his convictions. However, the post-conviction court found that Petitioner was prejudiced by both trial and appellate counsel's failure to object to or raise on appeal the trial court's imposition of consecutive sentences based on the dangerous offender category without making the requisite findings under *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). The post-conviction court granted relief in the form of a new sentencing hearing solely on the issue of consecutive sentences. Both the State and Petitioner appealed. Upon our review of the record and applicable law, we affirm the post-conviction court's decision on the issue of the alibi witnesses. However, we find that Petitioner has failed to show by clear and convincing evidence that he was prejudiced by trial and appellate counsel's failure to raise the *Wilkerson* issue. Therefore, we reverse the post-conviction court's judgment on that matter and reinstate Petitioner's sentences as they were originally ordered by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part and Reversed in Part.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; Reginald Henderson, Doug Carriker, and Marquis Young, Assistant District Attorneys General, for the appellant, State of Tennessee.

Robert C. Brooks, Memphis, Tennessee, for the appellee, Alvin Malone.

## OPINION

*Factual and Procedural Background*

On December 2, 2006, a Shelby County jury convicted Petitioner of two counts of first degree felony murder, one count of first degree premeditated murder, and two counts of especially aggravated kidnapping. The trial court merged the first degree murder conviction with one of the felony murder convictions. The evidence against Petitioner was primarily based upon the testimony of one of his co-defendants, Orel Chapa, which this Court determined to be corroborated by the other testimony and evidence presented at trial. *Alvin Malone*, 2008 Tenn. Crim. App. LEXIS 813, at *67. The facts of this case, as summarized by this Court in response to Petitioner's challenge to the sufficiency of the evidence, are as follows:

> [I]n the light most favorable to the State, the evidence showed that [Petitioner] was in possession of cocaine from a drug cartel that was subsequently stolen in a burglary. [Petitioner] initially thought Chapa was the thief and wanted to kill him. When Chapa indicated that [Taurus] Vester was the likely thief,[1] Chapa was ordered to lure Vester to Chapa's house. Armed with guns, [Petitioner and the other two co-defendants] ordered Vester to the ground and bound him with duct tape. [Vester's girlfriend, Octavia Lynn] Nelson[,] was forcibly grabbed out of Vester's car and bound with duct tape as well. Vester and Nelson were forced into [a] rental vehicle with [Petitioner and co-defendants]. While en route to [Petitioner's] auto body shop, an exchange of

---

[1] Testimony at trial indicated that Vester was not responsible for the theft and that the three kilograms of cocaine were actually stolen by two other men. *Alvin Malone*, 2008 Tenn. Crim. App. LEXIS 813, at *4.

gunfire took place during which Vester was shot four times. Nelson was shot after the group arrived at the shop at a point when [Petitioner and two co-defendants] were the only ones in the vehicle. Even though Chapa did not see who actually fired the deadly shots, the jury was instructed that [Petitioner] could be criminally responsible for the conduct of others.

*Id.* at \*68-69 (footnote added). The post-conviction court noted that, "[a]t the sentencing hearing, Petitioner denied being present for the incident and further denied knowing the victims." Petitioner was sentenced to life for each felony murder conviction and to twenty years for each kidnapping conviction, all running consecutively. Petitioner appealed to this Court, raising several issues for review. This Court affirmed Petitioner's convictions and sentence on October 2, 2008. *Id.* at \*73-74. Petitioner sought permission to appeal his case to the Tennessee Supreme Court, which was denied on March 23, 2009.

On November 19, 2009, Petitioner filed a pro se petition for post-conviction relief. After the appointment of counsel, Petitioner filed an amended petition on August 25, 2010, a supplemental amended petition on September 23, 2011, and a revised supplemental amended petition on October 3, 2011. Petitioner claimed that he had received ineffective assistance of counsel both at trial and during his direct appeal. As it relates to this current appeal, Petitioner specifically alleged that his trial counsel was deficient for failing to call alibi witnesses to testify and that both his trial and appellate counsels were deficient for failing to object to or appeal the trial court's imposition of consecutive sentences based on the dangerous offender category without making the requisite findings under *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).[2] Hearings on the petition were held on August 11, 2011, February 27, 2013, and April 25, 2013.

At the August 11, 2011 hearing, Petitioner's trial counsel was called to testify. Trial counsel practiced criminal defense almost exclusively for twenty-three years until he became a General Sessions judge. Trial counsel testified that he handled several hundred cases, twelve to fifteen of which were murder cases. He testified that in Petitioner's case, their defense at trial was that Petitioner was not involved and that he had an alibi for the time the murders were supposed to have taken place. He conceded that he did not object to the trial court's failure to make the necessary *Wilkerson* findings before imposing a consecutive sentence, but also testified that he had not reviewed the transcripts of the sentencing hearing to refresh his recollection on the matter. The appellate record, including transcripts of the

_____

[2]Other issues raised in the petition for post-conviction relief and addressed in the post-conviction court's order have not been raised by the parties for review on appeal and are, thereby, waived. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at \*6 n.2 (Tenn. Crim. App. Oct. 26, 2009).

trial and sentencing hearing, was submitted into evidence on a CD.

At the February 27, 2013 hearing, the first witness to testify was Petitioner's appellate counsel. He testified that he did not raise the trial court's failure to make *Wilkerson* findings on appeal because the issue had not been raised by trial counsel in the motion for a new trial. However, he acknowledged that a motion for new trial did not control sentencing issues and that he challenged the use of an enhancement factor on direct appeal. *See Alvin Malone*, 2008 Tenn. Crim. App. LEXIS 813, at *69-73. Appellate counsel testified that after communicating with Petitioner, "the big sentencing issue was that the trial court erred in finding the defendant was a leader in the offenses and using that enhancement factor in sentencing." During cross-examination, Appellate counsel acknowledged that the issue of consecutive sentencing never came up in his communications with Petitioner.

The next witness to testify at the February 27 hearing was Lillie Jones, a friend of Petitioner and the mother of his fiancée, Robin Jones.[3] Lillie Jones was aware that Petitioner was charged with a kidnapping and murder that were alleged to have occurred sometime between January 23 and 24 of 2005. According to Lillie Jones, she saw Petitioner at a family gathering at her house on January 23, 2005. She testified that she usually cooked a family dinner on Sundays. She testified that Petitioner came with her daughter around noon, and they left sometime around 8:30 or 9:00 that evening. Lillie Jones testified that she hired Petitioner's trial counsel and that she told trial counsel about the family gathering and the numerous witnesses who could verify Petitioner's attendance. However, trial counsel told her that he did not want to use them "at this time." Lillie Jones testified that she was present during the trial and was available to testify, but trial counsel did not call her as a witness. On cross-examination, Lillie Jones admitted that she could not remember the date of the murders or the date Petitioner was arrested. She also admitted that she did not tell anyone else, other than Petitioner's attorney, about Petitioner's alleged alibi.

The last witness to testify at the February 27 hearing was Petitioner's fiancée, Robin Jones. Robin Jones testified that she and Petitioner have a daughter together and that they have been together for eleven years, since she was thirteen years old. She testified that in January of 2005, she was fifteen or sixteen years old and Petitioner was twenty-five. According to Robin Jones, she was with Petitioner all day on Sunday, January 23, 2005. She testified that they went to her mother's house for a family gathering sometime in the afternoon and left around 10:00 p.m. They then went to Petitioner's house for the night, where they stayed until he took her to school the next morning. She also testified that she was with Petitioner at his home the day before, but she could not remember what they did that day. Robin Jones testified that she never met or shared this information with Petitioner's

_____

[3]For clarity, we shall refer to the witnesses by their full names.

-4-

trial counsel because she was waiting for him to contact her. She testified that she did not attend Petitioner's trial but that she would have been available to testify if she had been called as a witness. She admitted on cross-examination that she was not aware of the date on which the murders occurred and that she never spoke to the police about Petitioner's alleged alibi.

On April 25, 2013, Petitioner's trial counsel was recalled to testify because the issue of the alibi witnesses was added in the supplemental amended petition filed after trial counsel originally testified in 2011. Trial counsel testified that Petitioner's girlfriend and her mother indicated to him that Petitioner was at a family gathering on Sunday, January 23, 2005. Trial counsel explained his belief that the testimony would not have created a sufficient alibi because the murder was alleged to have occurred on Saturday evening and the bodies were not discovered until Sunday. Additionally, trial counsel explained that, in his experience, juries do not always find friends and family to be the most credible alibi witnesses without some other evidence to corroborate their testimony. Trial counsel testified that he and Petitioner discussed trial strategy at the close of the State's proof; they believed that the State's witnesses were not credible and that they had created sufficient reasonable doubt. He characterized the State's case as "discombobulated and weak." Trial counsel testified that, in his experience, having friends and family testify favorably for a defendant can easily backfire. He was concerned that if he put the alibi witnesses on the stand, the State could trip them up on cross-examination, and Petitioner could lose any credibility that he had built up in the jury's minds. He testified that it was ultimately Petitioner's decision not to testify and not to put on additional proof.[4] He stated that if Petitioner "vehemently wanted me to put on his alibi witnesses, I would [have] put them on."

Petitioner also testified at the April 25, 2013 hearing. He stated that he told his trial counsel about his alibi witnesses from "day one." Petitioner explained that the State's case was based primarily on testimony, that there was no physical evidence connecting him to the crime, and that he did not have a defense without his alibi witnesses to offer contradictory testimony. He testified that he "bumped heads a few times" with trial counsel because he felt as though trial counsel was not doing "all he could do talking to witnesses and stuff." Petitioner claimed that he and trial counsel argued over whether he should testify and whether the alibi witnesses should testify. He said that he and trial counsel spoke on three occasions. He said that he wanted to fire trial counsel, but he did not have the time or money to hire a new attorney because he was rushed into trial nine months after he was arrested. Petitioner testified that after he and trial counsel argued about his testifying, he "left it alone

---

[4]Trial counsel did call a police officer who collected evidence at the co-defendant's house and a retired medical examiner to rebut some of the State's proof. *Alvin Malone*, 2008 Tenn. Crim. App. LEXIS 813, at *27-29.

because [he could] see it was going to be his way or no way." On cross-examination, Petitioner clarified that he argued with trial counsel only about whether he should testify. Additionally, he acknowledged that he testified at trial that it was his decision not to testify in front of the jury, but explained that he decided not to testify only because trial counsel would not call his alibi witnesses. Petitioner stated that if he received a new trial, he would have other witnesses from the family gathering available to testify.

The post-conviction court filed an order on June 28, 2013, granting the petition for relief in part and denying it in part. As to the issue of the alibi witnesses, the post-conviction court found that trial counsel was aware throughout the trial that Petitioner's fiancée and her mother were available to testify, that they would have testified that Petitioner was at a family gathering on January 23, 2005, but that he did not call them to testify as a matter of trial strategy. The post-conviction court concluded:

> Although both [witnesses] would testify that the Petitioner was with them during the times the murders were committed, at hearing, their testimony was in some ways inconsistent. Further, testimony indicated that at the time of the trial, Petitioner's fiancé[e] was 15 or 16, that Petitioner was 25 at the time of trial, and, that prior to the incident, the Petitioner's fiancé[e] had been staying overnight at the Petitioner's house on a regular basis. These facts taken alone would have been enough to raise significant questions of the witnesses' credibility as viewed by a jury as well as the Petitioner's [t]rial counsel testified to this concern. . . Here, the decision not to call these witnesses falls within the range of a strategic decision. The [Petitioner] has failed to prove that trial counsel's decision, in light of the given testimony, was unreasonable.

The post-conviction court denied relief on this claim, as well as on other claims raised relating to Petitioner's convictions.

As to the issue of consecutive sentences, the post-conviction court found that the trial court "failed to make any factual findings to support consecutive sentencing as a 'dangerous offender.' Trial counsel did not object to this." The post-conviction court also found that appellate counsel "did not raise the issue of the trial court's failure to make factual findings to support finding that Petitioner was a 'dangerous offender.'" The post-conviction court concluded:

> Clearly, the trial court made impermissible errors in sentencing Petitioner. Trial counsel made no objections to the court's failure to make *Wilkerson* findings. Further, trial counsel made no indication that the failure to make an objection was a matter of trial strategy. *Wilkerson* findings have become

-6-

commonplace within our courts. In a sentencing hearing, issues such as consecutive sentencing can gravely impact a defendant if no objection is made. . . . In this case, Petitioner was initially sentenced consecutively as to the first degree felony murder counts immediately following the trial with the sentencing for the remaining counts to be heard at a sentencing hearing over a month later. Further, trial counsel had notice that the prosecution was seeking consecutive sentencing against the Petitioner. *Wilkerson* was decided over a decade before this case, and trial counsel had ample opportunity to research this issue. The Tennessee Court of Criminal Appeals has routinely remanded cases to the trial court for sentencing in cases where the court labels the defendant a 'dangerous offender' but fails to make any *Wilkerson* findings during sentencing. *See State v. [James Allen] Pollard*, No. M2011-00332-CCA-R3-CD, 2012 WL 4142253, at *21 (Tenn. Crim. App. Sept. 17, 2012); *State v. [Guadalupe] Arroyo*, No. E2003-02355-CCA-R3-CD, [2004 WL 1924033,] at *4 (Tenn. Crim. App. Aug. 30, 2004). Absent some strategic reason, failing to object at the sentencing hearing is objectively unreasonable within the professional norms of the courts in this state, and Petitioner was prejudiced by this failure.

The post-conviction court found that, because the issue would not have been waived on appeal because of trial counsel's failure to object, "it was also objectively unreasonable for appellate counsel to fail to bring this to the trial court's attention." The post-conviction court granted relief on this issue in the form of a new sentencing hearing, but emphasized that "Petitioner is in no way granted relief as to his conviction on any count. The new sentencing hearing should be limited only to the issue presented here."

The State filed a notice of appeal on July 12, 2013. The State argues that the post-conviction court erred in finding that Petitioner had established by clear and convincing evidence that he was prejudiced by trial and appellate counsels' failure to raise the issue of the lack of *Wilkerson* findings when the trial court imposed consecutive sentences. Petitioner also appealed, arguing that the post-conviction court erred in finding that he had not established deficiency or prejudice from trial counsel's failure to call his alibi witnesses. We will address each issue raised by the parties in turn.

*Analysis*

*Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee

-7-

or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the post-conviction court's decision on questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Momon*, 18 S.W.3d at 156 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

### Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel at trial and on appeal. Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. A defendant has a right to effective representation both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). The test for ineffective assistance of counsel is the same for both trial and appellate counsel. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner "must show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense." *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. A petitioner is not entitled to the benefit of hindsight to second-guess a reasonably based trial strategy or a sound, but

unsuccessful, tactical decision. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference "applies only if the choices are informed ones based upon adequate preparation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992)). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 691).

*Alibi Witnesses*

Petitioner argues that the post-conviction court erred in finding that he had not established deficiency or prejudice from trial counsel's failure to call his fiancée and her mother as alibi witnesses. It is well-settled that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is so that the petitioner can meet his burden of showing that the witness could have been found by a reasonable investigation and would have testified favorably in support of his defense if called. *Id.* at 758. The post-conviction court is also able to gauge the credibility of the witness's testimony to determine if it would have been favorable to the petitioner. Petitioner has met this initial burden as far as the testimony of Robin Jones and Lillie Jones is concerned. Petitioner claimed that other family members who attended the gathering would also be available to testify, but we cannot speculate as to what these other witnesses may have testified to if called at trial.

The post-conviction court found that trial counsel made a strategic decision not to call Petitioner's proposed alibi witnesses, even though we note there was some inconsistency in trial counsel's testimony on the matter. When he originally testified in 2011, he stated that the defense was that Petitioner was not involved in the murders and that he had an alibi, what he called "a complete not there defense." When trial counsel was recalled to testify in 2013 and specifically asked why he didn't call alibi witnesses, he explained that, as a matter of trial strategy, he felt their testimony would hurt Petitioner more than help him. Trial counsel testified that at the close of the State's proof, he and Petitioner discussed trial strategy. He believed that they had created sufficient reasonable doubt that they did not need to take the risk of presenting alibi witnesses. There has been no showing that this decision was based on inadequate preparation, and this Court will not use hindsight to second guess trial counsel's tactical decisions. *Hellard*, 629 S.W.2d at 9. Petitioner has not rebutted the presumption that trial counsel's tactical decision fell "within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Additionally, the post-conviction court found that Petitioner's proposed alibi witnesses would not have been particularly credible in front of a jury. The post-conviction court pointed out the significant age difference between Petitioner and his fiancée—who was a minor at the time of trial—as a cause for concern. The post-conviction court also noted that there were inconsistencies in the testimony of the two witnesses. On appeal, this Court gives deference to the post-conviction court's decision on questions concerning witness credibility as well as the weight and value to be given to testimony. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). There is nothing in the record before us that preponderates against the post-conviction court's finding. *See Burns*, 6 S.W.3d at 461. Therefore, we affirm the decision of the post-conviction court as it relates to the presentation of alibi witnesses. Petitioner is not entitled to relief from his convictions on this claim .

*Consecutive Sentences*

The State challenges the post-conviction court's finding that Petitioner was prejudiced by trial and appellate counsels' failure to object to or raise on appeal the trial court's imposition of consecutive sentences based on the dangerous offender category without making the necessary *Wilkerson* findings.

When a defendant has been convicted of multiple crimes, the trial court may order that the sentences be served consecutively if it finds by a preponderance of the evidence that one of the seven categories listed in Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). In order to impose consecutive sentences under the dangerous offender category, the trial court is required to make two additional findings: "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939. "The need for the additional findings before imposing consecutive sentencing on the basis of the 'dangerous offender' provision arises, in part, from the fact that this category 'is the most subjective and hardest to apply.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999)).

There is no dispute in this case that the trial court's statement that Petitioner "is a dangerous offender, by definition," does not satisfy the requirements of *Wilkerson*. We agree with the post-conviction court's finding that *Wilkerson* was a widely known case decided long before Petitioner's sentencing hearing. Both trial counsel and appellate counsel, if not previously aware of the case, could have discovered it through adequate legal research. "Criminal defense attorneys must conduct adequate legal research in order to meet the

required range of competence." *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009) (citing *Cooper v. State* , 847 S.W.2d 521, 527-28 (Tenn.Crim.App. 1992)).

As far as appellate counsel's performance, we note that he did raise a sentencing issue on appeal, in addition to several other issues. Our supreme court has held that appellate counsel is "not constitutionally required to raise every conceivable issue on appeal" and the "determination of which issues to raise on appeal is generally within appellate counsel's sound discretion." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). However, the lack of *Wilkerson* findings in this case was a fairly "significant and obvious" issue that could have been raised by appellate counsel on direct appeal, or by trial counsel in the motion for new trial, and neither attorney offered a legitimate reason for failing to raise the issue. *See Carpenter*, 126 S.W.3d at 889. We agree with the post-conviction court's finding that both trial and appellate counsels' performance was deficient in this regard.

In order to be entitled to post-conviction relief, however, Petitioner must also prove by clear and convincing evidence that he was prejudiced. *See Michael Eugene Wilkerson v. State*, No. M2009-00561-CCA-R3-PC, 2010 WL 2787751, at *12 (Tenn. Crim. App. July 14, 2010), *perm. app. denied* (Tenn. Dec. 8, 2010). To do so, he must prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994);

The post-conviction court cited two cases—*State v. James Allen Pollard*, No. M2011-00332-CCA-R3-CD, 2012 WL 4142253, at *21 (Tenn. Crim. App. Sept. 17, 2012) and *State v. Guadalupe Arroyo*, No. E2003-02355-CCA-R3-CD, 2004 WL 1924033 at *4 (Tenn. Crim. App. Aug. 30, 2004)—to support the proposition that this Court "routinely remanded cases to the trial court for sentencing in cases where the court labels the defendant a 'dangerous offender' but fails to make any *Wilkerson* findings during sentencing," and concluded that the Petitioner was prejudiced. However, the state of the law at the time of Petitioner's direct appeal is not so clear.

When Petitioner's case was originally appealed in 2008, this Court would have reviewed the application of consecutive sentences under a de novo standard of review with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to that section noted, the burden was on the appealing party to show that the sentence was improper. T.C.A. § 40-35-401 (2006), Sent'g Comm'n Cmts. If the record showed that the trial court failed to make the necessary findings of fact, the presumption of correctness did not apply,

and this Court's review was purely de novo. *See State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

When a trial court failed to make the necessary *Wilkerson* findings, some panels of this Court remanded cases for new sentencing hearings. *See, e.g.*, *State v. Brandon McCoy*, No. M2007-00421-CCA-R3-CD, 2008 WL 1774985, at *1 (Tenn. Crim. App. Apr. 18, 2008); *State v. Blake Delaney Tallant*, No. E2006-02273-CCA-R3-CD, 2008 WL 115818, at *28 (Tenn. Crim. App. Jan. 14, 2008), *perm. app. denied* (Tenn. June 30, 2008). However, other panels conducted a de novo review of the record to determine the appropriateness of consecutive sentences. *See, e.g.*, *State v. Nathaniel Shelbourne, Jr.*, No. M2007-01844-CCA-R3-CD, 2008 WL 4644186, at *6 (Tenn. Crim. App. Oct. 21, 2008), *perm. app. denied* (Tenn. Mar. 16, 2009) ("[T]his Court may uphold consecutive sentencing if we are able to make the *Wilkerson* determinations from the record on appeal."); *State v. Richard Anthony Arriola*, No. M2007-00428-CCA-R3-CD, 2008 WL 1991098, at *7 (Tenn. Crim. App. May 8, 2008) ("We note that the trial court failed to make *Wilkerson* findings, but nevertheless, we conclude that the trial court properly ran the Defendant's sentences consecutively."); *State v. James A. Mellon*, No. E2006-00791-CCA-R3-CD, 2007 WL 1319370, at *10 (Tenn. Crim. App. May 7, 2007), *perm. app. denied* (Tenn. Sept. 24, 2007) ("In the instant case, the trial court failed to state explicitly on the record its findings concerning the *Wilkerson* factors. Nevertheless, exercising our power of de novo review, we conclude that the appellant is a dangerous offender."). Thus, we are satisfied that, during the original direct appeal of this case, this Court could have either remanded the matter for further sentencing or made its own de novo determination of the appropriateness of consecutive sentencing.[5] Neither choice would have been driven by the performance of the attorney(s).

Petitioner has failed to show a reasonable probability that the overall outcome of his case would have been different, namely that he would have received concurrent rather than consecutive sentences. We agree with the State that "[a] complete review of the circumstances surrounding the murders and the [P]etitioner's involvement in them . . . support the trial court's conclusions that the [P]etitioner is a dangerous offender and the imposition of consecutive terms." The proof at trial indicated that Petitioner was selling drugs for an out-of-state drug cartel. Petitioner initially believed that one of his co-defendants stole cocaine from him and threatened the lives of both his co-defendant and his co-defendant's mother. When the co-defendant pointed the finger at one of the victims, Petitioner forced his co-defendant to lure the victims to his house, where they were bound

---

[5]Even under the modern standard of review for consecutive sentencing, as set forth by our supreme court in *State v. Pollard*, this Court may either remand for a new sentencing hearing or conduct a de novo review when the trial court failed to provide adequate reasons on the record for imposing consecutive sentences. 432 S.W.3d 851, 863-64 (Tenn. 2013)

with duct tape. The victims were then put into a car, and during the drive, one of them was shot after he began to struggle. The second victim was shot at Petitioner's body shop; she was six weeks pregnant. The bodies were stuffed into the backseat and trunk of the victim's car, which was abandoned behind a church. Upon investigation, it was determined that none of the people Petitioner accused were actually responsible for the theft of his cocaine. *See Alvin Malone*, 2008 Tenn. Crim. App. LEXIS 813, at *2-14.

From the facts that were before the trial court, it is clear that Petitioner's behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk to human life was high. Petitioner murdered two innocent people falsely accused of theft by his co-defendant, making it clear that an extended sentence was necessary to protect the public from further criminal conduct by Petitioner and that consecutive sentences were reasonably related to the severity of the offenses committed. *See Wilkerson*, 905 S.W.2d at 939. Regardless of whether this Court remanded the original appeal for further sentencing by the trial court or conducted a de novo review, we conclude the outcome would have been the same as the original sentence imposed—consecutive sentences. Therefore, Petitioner has not proven by clear and convincing evidence that he was prejudiced by trial and appellate counsels' deficient performances. Therefore, we reverse the judgment of the post-conviction court and reinstate the sentences as originally ordered by the trial court.

*Conclusion*

Based on our review of the record, we find that the post-conviction court erred in finding that Petitioner was prejudiced by trial and appellate counsels' failure to object to or raise on appeal the trial court's imposition of consecutive sentences based on the dangerous offender category without making the necessary *Wilkerson* findings. Petitioner has not shown by clear and convincing evidence that, had the issue been raised, his sentences would have been ordered to run concurrently instead of consecutively. We do agree with the post-conviction court's determination that trial counsel's decision to forgo Petitioner's proposed alibi witnesses was a tactical decision and did not constitute deficient performance. Therefore, we affirm the post-conviction court's judgment in part and reverse in part.

_____
TIMOTHY L. EASTER, JUDGE